KENNETH S. BATTELLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104655, 104656.  Promulgated June 16, 1942.

*Louis Janin, Esq.*, for the petitioners.
*Arthur L. Murray, Esq.*, for the respondent.

OPINION.

KERN: The issues involved in these proceedings have already been set forth. The first, and main issue, is whether respondent erred in disallowing, as ordinary business deductions, the net losses sustained by the petitioner in 1936 and 1937 from transactions in commodity futures. The respondent classed those losses as losses from the sale of capital assets, allowable only to the extent of $2,000 in each of the two taxable years.

The petitioner, in insisting that respondent has erred in limiting these losses, relies upon *T. H. Banfield*, 42 B. T. A. 769, and *Ben Grote*, 41 B. T. A. 247. These cases do not, however, support the petitioner's position. In the *Banfield* case, *supra*, the issue in question was for the first time raised in respondent's amended answer, and therefore respondent had the burden of proof with regard to this issue. Our decision in that case was not on its merits, but to the effect that the respondent had failed to sustain this burden. Moreover the case was later reversed on this point, *Commissioner* v. *Banfield*, 122 Fed. (2d) 1017.

The *Grote* case, *supra*, however, is a decision on the merits involving futures transactions, and at first blush appears controlling of the issue herein presented. The decision of the *Grote* case is that losses sustained in hedging transactions are not capital losses subject to the deduction limitations of section 117 of the Revenue Acts of 1934 and 1936. We shall follow the rule of the *Grote* case. Having accepted this general rule, the material issue, therefore, is whether any or all of this petitioner's losses were suffered as the result of hedging transactions. This being largely a factual question, it must necessarily be answered in each case upon the peculiar facts presented.

The term "hedging" has, for years, defied concise and exact definition. In *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772 (C. C. A., 5th Cir., 1941), reversing 41 B. T. A. 1083 (certio-

rari denied, 314 U. S. 683), the court gave the following definition of the term:

A hedge is a form of price insurance, it is resorted to by business men to avoid the risk of changes in the market price of a commodity. The basic principle of hedging is the maintenance of an even or balanced market position.

This description of hedging is not sufficiently detailed and exclusive to be used as a complete guide in all factual inquiries without the addition of such further necessary and material qualifications as the facts of the individual case require.

Viewing the facts of the instant proceeding in the light of the court's definition of hedging in the *Farmers & Ginners Cotton Oil Co.*, case, *supra*, we have concluded that the transactions, with the exception of those in cotton futures in the year 1936, which are discussed *infra*, do not constitute hedges. None of the 1936 wheat futures transactions, most of which called for deliveries in May, July, and September, are shown to have been a hedge. There was neither any wheat on hand nor in the ground against which to hedge, and petitioner did not plant any wheat until November of that year, whereas all the transactions were initiated in the early part of the year and called for deliveries before any wheat planted by petitioner could be harvested. Likewise, none of petitioner's 1937 cotton futures transactions can be considered as a hedge for the reason that the petitioner never once established a short position but, on the contrary, maintained a long position throughout two and one-half months of that year. Petitioner's futures transactions in corn, which commodity market, as that of rye, also, has been through custom of the trade used for the hedging of barley, for which there is no active futures market, do not appear to us to have been hedging transactions. While he never assumed a long position, it will be noted that petitioner's first three short positions were maintained for the unreasonably short periods of four, eight, and three days, respectively, which rapid change of position is not consistent with the basic principle of hedging unless the market during those few days may have taken an unusually sudden drop to the point where the petitioner could have suspected it to be at a low. We have no evidence of such market condition and, without such evidence, we must conclude that this rapid and sporadic action was speculation. It is also pertinent to note that petitioner's final and largest transactions, although the short position was therein maintained for a period of three and one-half months, were entered into subsequent to the disposition of all barley on hand or in the ground and were for a December delivery, although petitioner's 1937 crop had not yet been planted and could not be expected to be ready for harvest until at least six months after that date. Petitioner's two intermediate transactions, though possessing many of the attributes of hedges when viewed as isolated transactions, can not be so considered in view of the

general speculative aspect of the corn futures transactions in 1936, regarded as a whole.

Petitioner's cotton futures transactions in 1936 were, however, of a different nature. There was never an assumption of a long position. The short position assumed by petitioner in January of that year was never fully offset until July, when it is apparent from the figures in evidence that the price per bale had dropped to a very low level. Petitioner planted his crop in the early part of 1936 and anticipated harvest in October. He did not short himself in a greater amount than he might reasonably have anticipated harvesting. Although a short position was assumed prior to planting and at a time when no cotton remained on hand, there was always the reasonable anticipation of the 1936 crop, which was planted sometime in the early part of the year and was harvested on or about the dates upon which delivery was called for by these futures contracts. The fact that a taxpayer does not have the commodity on hand at the time he assumes the short position does not preclude him from correctly terming it a hedge so long as he shows his purpose was to offset the production risk of a commodity he expects to have on hand for sale.

His maximum 1936 short position in cotton was 600 bales, assumed in April. His fall harvest yielded 471 bales. The only transaction in 1936 in cotton futures which appears at all questionable is the 200 bales short position assumed October 9, 1936, and offset the following day. This isolated transaction is unexplained, but, in view of the petitioner's general scheme of transactions, we conclude that these 1936 cotton futures transactions were hedges. We conclude that while petitioner's activities on certain commodity futures markets were speculative, his transactions in cotton were not.

Viewing petitioner's numerous transactions on the corn and rye futures markets in 1937, we conclude that they did not constitute hedges against his barley crop.

Petitioner was "in" and "out", "long" and "short", throughout the year. He never maintained any short position for longer than eleven days and the relinquishment of his sporadic short positions was never correlated with the sale of any of his crop. In addition, he continued to engage in futures transactions after the sale of all barley on hand and at a time when no new crop was planted and, so far as the evidence discloses, these transactions called for delivery on dates long prior to any anticipated future barley harvest. These 1937 futures transactions in corn and rye were not hedges and we so hold.

The sole remaining futures transactions are the 1937 wheat transactions, wherein petitioner did his most active business. Here, again, petitioner was "in" and "out", "long" and "short" and for the first

time assumed straddle positions, i. e., the assumption of a short position and a long position, both at the same time, without first off-setting the short position. The effect of these straddle operations was that the petitioner's net straddle position was "long" during two-thirds of the taxable year. His crop was in the ground or on hand at all times during the year. As has already been indicated, we are not disposed under these circumstances to agree with an argument by the taxpayer that any of such transactions were intended to be hedges.

The losses sustained on these transactions discussed above are allowable in each of the two years only to the extent of $2,000 plus the gains from such sales or exchanges, under section 117 (d) of the Revenue Act of 1936. The 1936 cotton futures transactions, however, we have held were not speculative transactions but were hedges and, accordingly, the losses sustained on these particular transactions are not so limited, but are allowable in full.

There is one further series of transactions still to be dealt with. In 1937 petitioner bought and accepted delivery of wheat produced by others and resold this wheat at a net loss of $15,046.96. Applying the definition of capital assets contained in section 117 (b) of the Revenue Act of 1936 to this wheat so acquired by the taxpayer, we conclude that this was not the purchase and sale of a capital asset. Section 117 (b) specifically excludes from its definition of capital assets:

Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

This wheat, of which the taxpayer took delivery with the intention of resale, falls within the latter exception as set forth above.

Therefore, we hold that the losses sustained on the sale of the wheat purchased by the taxpayer are not limited by section 117 (d), but are allowable in full.

The final issue for our determination deals with petitioner's right to deduct as business expenses the selling commissions on the transactions outlined above. Since petitioner was not a dealer with regard to contracts for future purchases and sales, these expenses should be considered as part of the cost when computing gain or loss. *Spreckels* v. *Helvering*, 315 U. S. 626. We, accordingly, disallow the deduction *qua* expenses of the selling commissions on those futures transactions here involved.

*Decision will be entered under Rule 50.*